**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:21-cv-4717 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| MACKINAC FINANCIAL CORPORATION, | : **SECURITIES EXCHANGE ACT OF** |
| PAUL D. TOBIAS, WALTER J. ASPATORE, | : **1934** |
| DENNIS B. BITTNER, JOSEPH D. GAREA, | : |
| KELLY W. GEORGE, ROBERT EDWARD | : **JURY TRIAL DEMANDED** |
| MAHANEY II, ROBERT H. ORLEY, | : |
| RANDOLPH C. PASCHKE, DAVID R. | : |
| STEINHARDT, and MARTIN A. | : |
| THOMSON, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Mackinac Financial Corporation, ("Mackinac Financial or the "Company") and the members Mackinac Financial's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Mackinac Financial and Nicolet Bankshares, Inc. and its affiliates ("Nicolet Bankshares").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on May 18, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Mackinac Financial with merge with and into Nicolet Bankshares, with Nicolet Bankshares surviving the merger (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Mackinac Financial stockholder will receive 0.22 shares of Nicolet Bankshares common stock and $4.64 in cash for each share of Mackinac common stock owned (the "Merger Consideration").

3. As discussed below, Defendants have asked Mackinac Financial's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Piper Sandler & Co. ("Piper Sandler") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Mackinac Financial's stockholders or, in the

event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because defendants conduct a significant amount of business in this District, as well as trading on the NASDAQ Stock Exchange which is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Mackinac Financial stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Paul D. Tobias has served as a member of the Board since 2004 and is the Company's Chairman and Chief Executive Officer.

11. Individual Defendant Walter J. Aspatore has served as a member of the Board since 2004 and is the Lead Director of the Board.

12. Individual Defendant Dennis B. Bittner has served as a member of the Board since 2004.

13. Individual Defendant Joseph D. Garea has served as a member of the Board since 2007.

14. Individual Defendant Kelly W. George has served as a member of the Board since 2006 and is the President of the Company.

15. Individual Defendant Robert Edward Mahaney II has served as a member of the Board since 2008.

16. Individual Defendant Robert H. Orley has served as a member of the Board since 2004.

17. Individual Defendant Randolph C. Paschke has served as a member of the Board since 2004.

18. Individual Defendant David R. Steinhardt has served as a member of the Board since 2012.

19. Individual Defendant Martin A. Thomson has served as a member of the Board since 2018.

20. Defendant Mackinac Financial a Michigan corporation and maintains its principal offices at 130 South Cedar Street, Manistique, Michigan 49854.  The Company's stock trades on the NASDAQ Stock Exchange under the symbol "MGNC."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.     The Proposed Transaction**

23.     Mackinac Financial operates as the bank holding company for mBank that provides commercial and retail banking products and services in the United States. It offers interest bearing and non-interest bearing accounts, such as commercial and retail checking accounts, negotiable order of withdrawal accounts, money market accounts, individual retirement accounts, regular interest-bearing statement savings accounts, certificates of deposit, time deposits, and interest bearing transaction accounts. The Company provides loan products, including commercial loans to entities within real estate operators of nonresidential buildings industry; consumer loan products comprising installment, mortgages, home equity loans, and residential mortgage loans; and commercial and governmental lease financing, as well as offers safe deposit facilities. It has 28 branch locations, including 10 in the Upper Peninsula, 10 in the Lower Peninsula, 1 in Southeast Michigan, Michigan, and 7 in Wisconsin. The Company was formerly known as North Country Financial Corporation and changed its name to Mackinac Financial Corporation in December 2004. Mackinac Financial was incorporated in 1974 and is headquartered in Manistique, Michigan.

24.     On April 12, 2021, the Company and Nicolet Bankshares jointly announced the Proposed Transaction:

> GREEN BAY, Wis. and MANISTIQUE, Mich., April 12, 2021 /PRNewswire/ -- Nicolet Bankshares, Inc. (NASDAQ: NCBS) ("Nicolet") and Mackinac Financial Corporation (NASDAQ: MFNC) ("Mackinac") today jointly announced the execution of a definitive merger agreement, pursuant to which Nicolet will acquire Mackinac and its wholly-owned banking subsidiary, mBank.
>
> Based on the financial results as of December 31, 2020, the combined company will have pro forma total assets of $6.1 billion, deposits of $5.2 billion and loans of $3.9 billion, and Mackinac would represent approximately 25% of the combined company's year-end assets.

5

Mike Daniels, President and CEO of Nicolet National Bank said, "The acquisition of mBank is an important step in Nicolet's planned growth. This deal is not about expanded geographies but rather about the characteristics of the communities we will serve. Together, we will combine two organizations that understand the positive impact that a strong community bank can make. We look forward to becoming an integral part of the Upper Peninsula and Northern Michigan.

We want to offer two initial thoughts when it comes to the question of what's next. First, we know that scale and efficiencies matter in community banking today. Our customers continue to tell and show us that convenience no longer means a branch on every corner. Second, we understand that actions speak louder than words. We want the communities to know that we are committed to realizing the promise of this acquisition. After the transaction is complete, people will see a strong community bank focused on keeping decisions local. We will build and expand on mBank's legacy of being a great steward of its communities. Together, we will find the best ways to serve to become the lead-local community bank."

Paul Tobias, Chairman and CEO of Mackinac said, "On behalf of our Board of Directors, I am pleased to announce our merger into the Nicolet family. We have found a strategic partner that is a true community bank with deep commitments to the markets we serve. The market cultures of our respective organizations mesh well, and the greater lending access will strengthen our value to current and prospective customers. This deal represents a fair transaction that unlocks shareholder value for us both."

Bob Atwell, CEO and Chairman of Nicolet said, "Nicolet always takes the long view when it comes to acquisitions. This deal with Mackinac represents a unique and sizeable opportunity to expand Nicolet's franchise across a greater Northern footprint, while at the same time, being highly accretive to long-term shareholder value. It also opens up the possibility for future expansion into the state of Michigan, if and when the opportunity arises."

Kelly George, President and CEO of mBank said, "In Nicolet, we have found a strategic partner who shares our vision of being people-driven and community-centric. Together, we will continue to deliver personal and timely decisions through local bankers who are a part of the communities we serve. Maintaining and creating strong

relationships will continue to be the value we bring to our customers."

*Transaction Information*

Under the terms of the merger agreement, Mackinac shareholders will have the right to receive 0.22 shares of Nicolet's common stock and $4.64 for each share of common stock of Mackinac Financial Corporation with total consideration to consist of approximately 80% stock and 20% cash. Based upon the closing price of Nicolet Bancshares common stock of $84.40 on April 9, 2021, the implied per share purchase price is $23.21, with an aggregate transaction value of approximately $248 million.

The estimated transaction value is a 1.69 multiple of Mackinac's tangible book value as of December 31, 2020 and equates to approximately 18.3x Mackinac's 2020 earnings per share. Additional assumptions and metrics can be found in the related Investor Presentation.

*Leadership/Employee Information*

Post-merger, Paul Tobias will join the Boards of Directors of Nicolet Bankshares and Nicolet National Bank. All customer-facing employees of Mackinac are expected to stay on in the same capacity.

*Approvals and Closing Date*

The transaction has been unanimously approved by the boards of directors of both companies. It is subject to both Mackinac and Nicolet shareholder approval, regulatory approvals and other customary closing conditions and is expected to close in the third quarter of 2021. Upon consummation of the transaction, Nicolet's existing branch at 325 W. Pine Street, Eagle River, WI is expected to close and consolidate with continued service out of the legacy mBank office at 400 E. Wall Street, Eagle River, WI.

*Advisors*

Hovde Group, LLC provided a fairness opinion to the Board of Directors and Bryan Cave Leighton Paisner LLP served as legal counsel to Nicolet in this transaction. Piper Sandler & Co. served as financial advisor and delivered a fairness opinion to the Board of Directors of Mackinac, and Honigman LLP served as Mackinac's legal counsel.

\* \* \*

25. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Mackinac Financial's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Registration Statement**

26. On May 18, 2021, Mackinac Financial and Nicolet Bankshares jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27. The Registration Statement fails to provide material information concerning financial projections by management of Mackinac and Nicolet and relied upon by Piper Sandler in its analyses. The Registration Statement discloses management-prepared financial projections for the Company and Nicolet which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that management of both companies prepared certain non-public financial forecasts (the "Company Projections" and the "Nicolet Projections") and provided them to the boards of both Mackinac and Nicolet and the

financial advisors by with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the Company Projections, the Registration Statement fails to provide line items used to calculate net income. Without this information, stockholders do not have a way to replicate management's calculation of Mackinac Financial's prospects.

29. For the Nicolet Projections, the Registration Statement fails to provide line items used to calculate publicly available mean analyst earnings per share estimates and the inputs and assumptions for using a 5.0% long-term annual earnings per share growth rate for Nicolet. Without this information, stockholders do not have a way to replicate management's calculation of Nicolet Bancshares' prospects. This information is especially important since the Proposed Transaction is a stock and cash transaction and Mackinac shareholders will own Nicolet Bancshares stock post-close.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

30. With respect to Piper Sandler's *Mackinac Comparable Company Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Piper Sandler in the analysis.

31. With respect to Piper Sandler's *Nicolet Comparable Company Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Piper Sandler in the analysis.

32. With respect to Piper Sandler's *Analysis of Precedent Transactions*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Piper Sandler in the analysis.

33. With respect to Piper Sandler's *Net Present Value Analysis* performed in accordance with internal financial projections, the Registration Statement fails to disclose: (i) the terminal values of Mackinac Financial as of December 31, 2025; (ii) the inputs and assumptions underlying the use of earnings multiples range of 11.0x to 16.0x; (iii) the inputs and assumptions underlying the use of 2025 tangible book value range rate of 90% to 140%; and (iv) the inputs and assumptions underlying the discount rates ranging from 11.0% to 15.0%.

34. With respect to Piper Sandler's *Net Present Value Analysis* performed in accordance with publicly available mean analyst earnings per share and dividend per share estimates for Nicolet Bankshares, the Registration Statement fails to disclose: (i) the terminal values of Nicolet Bankshares as of December 31, 2025; (ii) the inputs and assumptions underlying the use of earnings multiples range of 12.0x to 17.0x; (iii) the inputs and assumptions underlying the use of 2025 tangible book value range rate of 160% to 260%; and (iv) the inputs and assumptions underlying the discount rates ranging from 10.0% to 14.0%.

35. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed

decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Mackinac Financial within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Mackinac Financial, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements

contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Mackinac Financial, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Mackinac Financial, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

46. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 26, 2021  **MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com